UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FESUIAI S. FUIMAONO,<br>Petitioner,<br>v.<br>JOE LIZARRAGA,<br>Respondent. | Case No. 18-cv-03650-SI<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Fesuiai S. Fuimaono filed this *pro se* action for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 to challenge his conviction in Alameda County Superior Court for several sex crimes against a minor. For the reasons discussed below, the court denies the petition on the merits.

**BACKGROUND**

Only a brief summary of the evidence presented at trial is necessary because the facts of the crimes are not relevant to the legal issues raised by the petition for writ of habeas corpus. The principal witness against Fuimaono was Jane Doe, who was 22 years old at the time of trial and was the daughter of Fuimaono's girlfriend. Jane Doe testified that Fuimaono "had sexually assaulted her repeatedly during two different time periods when she was a minor, the first period beginning when she was about nine years old and the second period beginning when she was 15 or 16. These assaults included molestations, oral copulation and penile penetration." *People v. Fuimaono*, No. A150350, 2018 WL 1026179, at *1 (Cal. Ct. App. Feb. 23, 2018), *review denied* (May 9, 2018).

Following a jury trial in Alameda County Superior Court, Fuimaono was convicted of committing a lewd act on a child, continuous sexual abuse of a minor under 14 years old, two counts of unlawful sexual intercourse with a minor more than three years younger than the defendant, two

counts of oral copulation with a minor, and sexual penetration of a minor with a foreign object. Fuimaono was sentenced to a total of 15 years and four months in state prison.

Fuimaono appealed. In 2018, the California Court of Appeal affirmed the judgment of conviction in a reasoned decision. Also in 2018, the California Supreme Court summarily denied his petition for review. He did not file any state petitions for writ of habeas corpus.

Fuimaono then filed this action. In his federal petition for writ of habeas corpus, Fuimaono claims that his rights to due process and a trial by jury were violated when the trial court discharged a juror during the jury deliberations. The court issued an order to show cause. Respondent has filed an answer. Fuimaono has not filed a traverse and the deadline by which to do so has passed.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction over this action for a writ of habeas corpus under 28 U.S.C. § 2254. *See* 28 U.S.C. § 1331. This action is in the proper venue because the petition concerns the conviction and sentence of a person convicted in Alameda County, California, which is within this judicial district. *See* 28 U.S.C. §§ 84, 2241(d).

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended § 2254 to impose new restrictions on federal habeas review. A petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412-13 (2000).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. "A federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was 'objectively unreasonable.'" *Id.* at 409.

The state-court decision to which § 2254(d) applies is the "last reasoned decision" of the state court. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005). When confronted with an unexplained decision from the last state court to have been presented with the issue, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). The presumption that a later summary denial rests on the same reasoning as the earlier reasoned decision is a rebuttable presumption and can be overcome by strong evidence. *Kernan v. Hinojosa*, 136 S. Ct. 1603, 1605-06 (2016).

**DISCUSSION**

Fuimaono contends that the discharge of Juror 12 during deliberations violated his Sixth Amendment right to a jury trial and his Fourteenth Amendment right to due process. He urges that the trial court "prematurely releas[ed] Juror 12 before conducting an adequate inquiry to determine whether good cause existed to excuse her from further deliberations." Docket No. 1 at 22. He also urges that the trial court first should have tried other potential remedies (e.g., re-instructing or

3

admonishing the jury) before deciding whether to release Juror 12.

A. Background

On the second day of deliberations (a Friday), the jury sent a note at 11:05 a.m. indicating that it was deadlocked. The court instructed the jury to continue deliberating. The jury recessed for the day at 12:04, with a plan to return to continue deliberations the following Wednesday. After the jury left for the day, there was a buzz from the jury room to summon the bailiff and Juror 12 was heard sobbing uncontrollably in the jury room. *See* RT 1111-13, 1130.

After talking with counsel, the trial court had Juror 12 brought to the courtroom to explain the problem. Juror 12 appeared "very tearful" to the court. RT 1104. The court made inquiries about the cause of Juror 12's emotional distress, being very clear that the court did not want to hear anything about the state of the deliberations. RT 1105. In response to the court's questions, Juror 12 stated that her emotional state had something to do with her sitting as a juror and did not think it would help for her to take a few days before talking about the problem. RT 1105. She stated, "I feel like I have been personally attacked by my peers, or some of my peers, and I don't feel like -- I feel like, in continuing, that I'm forced to try to defend myself. And it's very difficult. I feel attacked and going into all of this." RT 1106. The court asked, "Are you asking to be released?" and Juror 12 responded, "yes." RT 1106. Juror 12 confirmed that her upset state was not a reaction to the type of charges against the defendant and was instead due to her responsibilities in deliberating. RT 1106. The court decided that Juror 12 should return the following Tuesday to talk about the matter.

The day before Juror 12 returned, the court heard argument from counsel about the proper standards to deal with the juror and any questions counsel wanted asked of the juror. RT 1115. The court and counsel appeared in agreement that the relevant state law was California Penal Code Section 1089.[1]

---

[1] California Penal Code § 1089 provides: "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged" and replaced with an alternate.

4

On Tuesday, Juror 12 returned to the courtroom. At the outset, the court noted that Juror 12 was again "tearing up," although not crying as much as at the last session. RT 1124. In response to the court's questions, Juror 12 stated that no one had used physical force or touched her in any way. RT 1125. After explaining that the give-and-take of jury deliberations sometimes can leave a juror feeling that things have become too personal, the court asked: "Is there some other juror you felt was acting grossly inappropriately in what they said or did that I should check out further? Or it's just the reality there were several people; they all seemed rude." RT 1125. Juror 12 responded: "The latter. There are several people. It's more than just rude. . . . It's personal. Things have been said to me that are, like, personally shaming of my views. People who don't know me. . . . I feel personally attacked. I feel bullied. . . . [T]here are a handful of other jurors who this has been a continuing behavior." RT 1125-26. Juror 12 confirmed that the problem did not arise until deliberations started. RT 1126.

After Juror 12 exited the courtroom, the court stated: "I picked up where I left off. I did not see a feasible way to revisit her request. That she teared up again should not be surprising to me. It's clear I intend to go forward and let her go. It is clear that the stress of this is an emotional issue; so clear that it provides good cause." RT 1127. Defense counsel asked the court to further investigate the matter, arguing that Juror 12's comments that she had been personally shamed and felt bullied showed misconduct by other jurors; counsel also asked that the court further investigate the matter to see if the problem could be cured by an admonishment or reading of the jury instructions again so that Juror 12 could remain on the jury. RT 1127-28. The court determined that Juror 12 would not remain on the jury because of her emotional distress: "So this is a person basically emotionally collapsed. She has now been crying, not because of some momentary feeling, but she has cried steadily for minutes; continues to cry for minutes." RT 1130. The court stated that describing the juror as crying or being "teary-eyed" understated the severity of the upset Juror 12 was demonstrating and it therefore was "not proper to expect her to go forward." RT 1130, 1131. The court explained that a person's mental or physical health can provide good cause to release that juror, and that Juror 12's emotional state provided good cause to release her from deliberations without attempting to use further instructions as a means to keep her on the jury. RT 1131-33. It

was "clear" to the court that the other jurors' conduct was "not totally inappropriate," although worth some further inquiry. RT 1131; *see also* RT 1134 ("the case law is very clear jurors don't have to be courteous to each other. We demand some minimal level of civility" such as that genuine threats cannot be tolerated). The court decided to start with the foreperson and then determine whether other jurors should be questioned. RT 1133-35.

Juror 12 was brought back to the courtroom and discharged from the jury. RT 1136. She declined to provide any specific information that she thought the court should look into with the other jurors. RT 1136-37. An alternate juror was chosen to replace her.

The next day, Wednesday, the court questioned the foreperson. The foreperson stated that the deliberations had been civil in tone, and that there had been no physical threats, threatening gestures, or name-calling. RT 1146, 1150. The foreperson stated that Juror 12 had been "very passionate" about how she felt, and some other jurors had been passionate about how they felt, but their passionate opinions were "discussed in a civil manner." RT 1150-51.

When the rest of the jury was brought into the courtroom, the court instructed the jury with CALJIC 17.40 and 17.41, jury instructions that discussed the way to approach jury deliberations. RT 1152-53. The jury returned a verdict the following day, after deliberating for about six more hours after the alternate was put on the jury. CT 269, 272.

B. State Court Decision

The California Court of Appeal rejected Fuimaono's claim that the discharge of Juror 12 violated federal constitutional law and state law:

> A criminal defendant has a constitutional right to a unanimous verdict by a fair and impartial jury. (U.S. Const., 6th & 14th amends.; Cal. Const., art. I, § 16.) A trial court may discharge a sworn juror under certain circumstances. [California Penal Code] Section 1089 states in relevant part, "If at any time ... a juror ... upon ... good cause shown to the court is found to be unable to perform his or her duty, or if a juror requests a discharge and good cause appears therefor, the court may order the juror to be discharged and draw the name of an alternate, who shall then take a place in the jury box, and be subject to the same rules and regulations as though the alternate juror had been selected as one of the original jurors." "Removing a juror is, of course, a serious matter, implicating . . . constitutional protections . . . . While a trial court has broad discretion to remove a juror for cause, it should exercise that discretion with great care." (*People v. Barnwell* (2007) 41 Cal.4th 1038, 1052, fn. omitted (*Barnwell*).)

6

"Once a trial court is put on notice that good cause to discharge a juror may exist, it is the court's duty 'to make whatever inquiry is reasonably necessary' to determine whether the juror should be discharged." (*People v. Espinoza* (1992) 3 Cal.4th 806, 821.) Such an inquiry "is central to maintaining the integrity of the jury system, and therefore is central to the criminal defendant's right to a fair trial." (*People v. Kaurish* (1990) 52 Cal.3d 648, 694.)

. . .

"[N]ot every incident involving a juror's conduct requires or warrants further investigation. 'The decision whether to investigate the possibility of juror bias, incompetence, or misconduct—like the ultimate decision to retain or discharge a juror—rests within the sound discretion of the trial court.'" (*People v. Cleveland* (2001) 25 Cal.4th 466, 478.) "[A] trial court's inquiry into possible grounds for discharge of a deliberating juror should be as limited in scope as possible, to avoid intruding unnecessarily upon the sanctity of the jury's deliberations. The inquiry should focus upon the conduct of the jurors, rather than upon the content of the deliberations." (*Id.* at p. 485.)

. . . Defendant's argument [that the trial court prematurely discharged Juror 12 without first attempting other potential remedies] ignores the findings that led to the trial court's decision. After it inquired and observed Juror 12 on two occasions separated by three days during which she could have, but did not, regain her composure, the court found she had had an emotional breakdown that had "broken" her ability to deliberate, that her emotions were not abating and that there was no feasible cure. As the California Supreme Court has held on multiple occasions, a juror's emotional state may provide good cause for the juror's discharge if it prevents the juror from performing his or her duties. (*See People v. Lynch* (2010) 50 Cal.4th 693, 744–745 [trial court acted within its discretion in discharging a juror because of a concern that his "negative emotional state" was affecting his objectivity and ability to perform his duties after the court "exhaustively examined" the juror and gave him a day to regain his composure]; *Thompson, supra*, 49 Cal.4th at p. 138 [trial court had good cause to discharge a juror based on the court's concern that "her extremely distressed state" interfered with her ability to deliberate]; *People v. Lucas* (1995) 12 Cal.4th 415, 489 [court did not abuse its discretion in discharging a juror under section 1089 because, "[a]lthough the juror stated the cancellation of her vacation would not affect the discharge of her duties as a juror, her behavior and demeanor" indicated otherwise to the court].)

Here, the trial court thoroughly examined and observed Juror 12 regarding her emotional state. The court noted repeatedly that Juror 12 appeared to be very upset, including after she had three days to compose herself. Juror 12 made clear that she had been personally upset by how she had been treated by other jurors and did not feel capable of performing her duties any longer, and she requested to be discharged. This was, in the court's words, "a person basically emotionally collapsed," whose "ability to deliberate is broken. If she goes in, I pushed her back in, deliberation is not going to happen; she's going to acquiesce, or she's made up her mind." The evidence coupled with the court's findings meet the demonstrable reality standard and supports its decision to remove Juror 12.

Defendant's argument that the court should have further investigated the reasons for Juror 12's "discomfort" neither contends with the court's conclusion that her ability to deliberate was broken, nor explains how further investigation would have enabled her to again deliberate. The court made its decision only after Juror 12 responded to its inquiries by saying that no threats had been made to her, that the hurtful things said to her were a part of the reality of deliberations, and that there was nothing

involving any of the other jurors that she felt warranted further investigation by the court. (Although it was after discharging Juror 12, the court also inquired of the foreperson, who confirmed that the interactions in the jury room were nothing more than a passionate exchange of views, and the court then reinstructed the jury on appropriate decorum in deliberations.) Nothing in the cases defendant cites requires further investigation under such circumstances, and, indeed, the cases caution against investigating too much. (*See People v. Cleveland, supra*, 25 Cal.4th at p. 485 [cautioning that "a trial court's inquiry into possible grounds for discharge of a deliberating juror should be as limited in scope as possible, to avoid intruding unnecessarily upon the sanctity of the jury's deliberations"]; *Thompson, supra*, 49 Cal.4th at p. 137 [trial court did not abuse its discretion in choosing not to investigate further the defense's speculations of threat, where the trial court's questioning of the emotionally affected jurors did not reveal evidence to suggest that threats or attempts to drive off certain jurors were occurring].) The court did not abuse its discretion in concluding further inquiry of the other jurors would not have changed Juror 12's emotional state or enabled her to regain the ability to participate in deliberations.

*People v. Fuimaono*, 2018 WL 1026179, at *3–5.

As the last reasoned decision from a state court, the California Court of Appeal's decision is the decision to which § 2254(d) is applied. *See Wilson*, 138 S. Ct. at 1192. Fuimaono is entitled to habeas relief only if the California Court of Appeal's decision was contrary to, or an unreasonable application of, clearly established federal law from the U.S. Supreme Court, or was based on an unreasonable determination of the facts in light of the evidence presented.

C. Analysis

A criminal defendant has a constitutional right to trial "by an impartial jury." U.S. Const. amend. VI; *see also Duncan v. Louisiana*, 391 U.S. 145, 149 (1968) ("trial by jury in criminal cases is fundamental to the American scheme of justice" and therefore is among the rights the Fourteenth Amendment's Due Process Clause requires to be provided by the states). "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

The Ninth Circuit has determined that following the procedure set out in California Penal Code Section 1089 for the discharge and replacement of jurors does not violate a defendant's federal constitutional rights and "preserve[s] the 'essential feature' of the jury required by the Sixth and Fourteenth Amendments." *Miller v. Stagner*, 757 F.2d 988, 995 (9th Cir. 1985). The Ninth Circuit also has held that the trial court's discharge under Section 1089 of a holdout juror whose emotional

8

instability rendered her incapable of participating in further deliberations did not violate the defendant's constitutional rights, although that case was not governed by the AEDPA. *Perez v. Marshall*, 119 F.3d 1422, 1426 (9th Cir. 1997). Because good cause was established and "[n]othing in the record indicates that the trial court's discretion was clouded by the desire to have a unanimous guilty verdict," there was no violation of the defendant's right to a jury trial. *Id.* at 1427 (alteration in original).

Relief on Fuimaono's claim is foreclosed under § 2254(d)(1) because the rejection of his claim was not contrary to, and did not involve an unreasonable application of, clearly established Federal law as determined by the U.S. Supreme Court. 28 U.S.C. § 2254(d)(1). In short, the U.S. Supreme Court has never issued any holdings that give a clear answer to the questions presented by Fuimaono's petition.

The Supreme Court has not issued a holding addressing the propriety of a trial court removing a juror during deliberations. The Ninth Circuit recognized the absence of Supreme Court precedent in determining that the dismissal for "bias" of a juror who was holding out for acquittal did not support habeas relief because there was no clearly established law from the U.S. Supreme Court on point. *See Williams v. Johnson*, 840 F.3d 1006, 1009-10 (9th Cir. 2016). *Williams* explained that, although the Ninth Circuit earlier had held that reversal is warranted when it is "reasonably possible" that a juror has been dismissed due to her position on the merits of the case, habeas relief was not available because there was no similar holding from the Supreme Court and circuit-level precedent could not be the basis to grant relief in a habeas case governed by § 2254. *Williams*, 840 F.3d at 1009-10; *see also Victorian v. Singh*, 584 F. App'x. 742, 743 (9th Cir. 2014) (no habeas relief for petitioner who had "cited no United States Supreme Court case holding that dismissal of a juror, holdout or otherwise, is unconstitutional").

The Supreme Court also has not issued a holding that would govern resolution of Fuimaono's claim that the trial court did not do an adequate investigation before discharging Juror 12. With regard to the trial court's duties to make inquiries during jury deliberations, the one Supreme Court holding is not on point. The Supreme Court has held that it is reversible error for a trial court to inquire about the extent of the jury's numerical division when a jury reports that it is

deadlocked. *Brasfield v. United States*, 272 U.S. 448, 449-50 (1926); *see also Burton v. United States*, 196 U.S. 283, 307-08 (1905) (court asking about the numerical division of jury, even without asking how many are for conviction versus acquittal, "is not to be commended."). *Brasfield* does not aid in determining whether Fuimaono is entitled to relief because the trial court did not make inquiries about the nature and extent of the jury's numerical division at Fuimaono's trial. To the contrary, the trial court mentioned repeatedly its desire not to learn about the nature and extent of the jury's deliberations and explained to both Juror 12 and the foreperson that the trial court did not want to know about the nature of the deliberations. *See* RT 1105, 1113, 1115-16, 1119, 1121, 1124, 1133, 1139, 1145. The trial court's failure to make the more probing inquiry sought by Fuimaono was a reasonable effort to comply with the rule from *Brasfield* to avoid inquiring into the nature of the deliberations or the numerical split of the jurors. As *Brasfield* explained, seeking information about the nature or extent of the jury's division serves no useful purpose and generally has a coercive effect; rarely can a court ask about the nature of deliberations "without bringing to bear in some degree, serious, although not measurable, an improper influence upon the jury, from whose deliberations every consideration other than that of the evidence and the law as expounded in a proper charge, should be excluded." *Brasfield*, 272 U.S. at 450. Although *Brasfield* puts a limit on how far a court *may* go -- i.e., it may not ask about the extent of the jury's numerical division -- *Brasfield* simply provides no help in determining how far a trial court *must* go in making inquiries in response to an emotionally upset juror.

Finally, the Supreme Court has not issued a holding that requires a trial court to try alternative remedies, such as the reinstruction and admonishment Fuimaono suggests, before choosing to discharge a juror during deliberations.

Due to the absence of a holding from the U. S. Supreme Court on point, § 2254(d)(1) bars relief on Fuimaono's claims that his rights to due process and trial by an impartial jury were violated when the trial court dismissed Juror 12. Even if one considered the statement in *Smith v. Phillips* that due process requires a jury "capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen," 455 U.S. at 217, to provide clearly established federal law

10

from the U.S. Supreme Court, the California Court of Appeal's decision was not contrary to it or an unreasonable application of that decision.

The trial court found that Juror 12's emotional distress had "broken" her ability to continue deliberating, and that finding is presumed correct here. *See* 28 U.S.C. § 2254(e). Given that Juror 12's ability to deliberate was broken, Fuimaono has not shown that the California Court of Appeal's determination that the trial court properly discharged Juror 12 "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d)(2). The state appellate court also reasonably determined that the discharge of Juror 12 without trying other remedies first was proper, given the trial court's determination that she had an emotional breakdown that had broken her ability to deliberate. The state appellate court reasonably determined that further investigation of the reasons for Juror 12's emotional distress was not necessary because there was no showing how such investigation would have enabled Juror 12 to deliberate again and because the trial court was duty-bound not to intrude upon and possibly influence the deliberations. Fuimaono is not entitled to the writ of habeas corpus.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a case in which "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Accordingly, a certificate of appealability is DENIED.

## CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus is DENIED on the merits. The clerk shall close the file.

**IT IS SO ORDERED**.

Dated: January 29, 2019

_____
SUSAN ILLSTON
United States District Judge